## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-435


SAVANAH WILLIAMS

VERSUS

VINCENT ALEXANDER


**********

APPEAL FROM THE
BREAUX BRIDGE CITY COURT
PARISH OF ST. MARTIN, NO. 16-317
HONORABLE RANDY P. ANGELLE, CITY COURT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Marc T. Amy, D. Kent Savoie, and Van H. Kyzar, Judges.


**AFFIRMED.**

**Randy M. Guidry**
**Durio, McGoffin, Stagg & Ackermann**
**Post Office Box 51308**
**Lafayette, LA   70505**
**(337) 233-0300**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Vincent Alexander**

**Savanah Williams**
**417 Martin Street**
**Breaux Bridge, LA   70517**
**(404) 823-7348**
**IN PROPER PERSON**

**AMY, Judge.**

The plaintiff filed suit seeking the return of a truck to which she claimed ownership. The defendant, who maintained possession of the truck, asserted that the plaintiff had transferred ownership of the vehicle to him. Following trial in city court, the trial court found in favor of the plaintiff and ordered the defendant to tender possession of the truck to the plaintiff. The trial court further denied damages otherwise claimed by the parties. The defendant appeals. For the following reasons, we affirm.

## Factual and Procedural Background

The record indicates that the plaintiff, Savanah Williams, acquired a 1995 Chevrolet truck from the defendant, Vincent Alexander, on October 16, 2013. The title to the truck, issued on that date, lists Mrs. Williams as the owner. The parties differ on the underlying financial arrangement for the transfer of the vehicle. While Mrs. Williams contends that her husband, Calvin Paul Williams, completed carpentry work for Mr. Alexander in exchange for the truck and did so at the time of the 2013 transfer, Mr. Alexander asserts that the full extent of the expected work was not completed.

In January 2015, and after Mr. Williams did not respond to a demand letter,[1] Mr. Alexander traveled to the Williams' home, seeking the return of the truck. With Mr. Williams working out of town, the record indicates that Mrs. Williams surrendered physical possession of the truck to Mr. Alexander. Additionally, it is unquestioned that she signed the reverse of the original title as "Seller[.]" However, as observed by the trial court, "[t]here was no Bill of Sale, there was no other act of transfer, merely [Mr. Alexander] took possession of the 'Original Title' that was

---

[1] The exhibits include an October 17, 2014 demand letter from Mr. Alexander to Mr. Williams, in which Mr. Alexander asked, among other things: "Please provide me with a list of the work you claim you have done for the Chevrolet Diesel truck. I need your signature on the list. Please provide me with this list within the next **five days.**"

issued at the time of the acquisition of the truck[.]" Mr. Williams explained that, upon his return to town, he went to see Mr. Alexander, who returned the truck to him. Mr. Williams testified that, although he asked for the return of the original title, Mr. Alexander ultimately informed him that it was lost. Mrs. Williams thereafter obtained a duplicate title to the vehicle.[2]

After the truck was returned to Mr. and Mrs. Williams, their nephew, Phillip Williams, began using the truck. Phillip testified that, although he gave Mr. Williams $200 for the truck, he never owned the truck as he never finished paying the $300 he agreed to pay his uncle. When asked by the court, Phillip denied that he acquired title to the truck or that a bill of sale was completed. Instead, Phillip explained that Mr. Alexander called him and told him: "he got the [t]itle for the truck . . . Paul not [sic] finish paying for the truck, I need to bring the truck to his house." Phillip explained that he did so, driving the truck to Mr. Alexander's house.

Mrs. Williams instituted this matter in city court in August 2016 and sought the return of the vehicle to her as well as damages she alleged were incurred as a result of Mr. Alexander's retention of the truck. Mr. Alexander responded to the claim with a reconventional demand, seeking his own damages due to what he contends were defamatory allegations made by Mrs. Williams.

Following a trial, at which both parties represented themselves, the trial court found in favor of Mrs. Williams, explaining that: "The vehicle, it's clear to the [c]ourt beginning in October of 2016 [sic], 2013, was owned by, transferred to and became owned by Savanah Williams and the community of Savanah and Mr. Williams and continues to be owned by them to this day." Accordingly, the trial court ordered the immediate return of the truck to Mrs. Williams. It denied damages as requested by both parties.

Mr. Alexander appeals, asserting that:

---

[2] Copies of both the original and the duplicate title were placed into evidence by Mr. Alexander and Mrs. Williams, respectively.

2

1. The lower [c]ourt erroneously applied the facts to the law in this matter as it relates to ownership of a motor vehicle by rendering a [j]udgment which failed to recognize the fact that legal ownership of a motor vehicle transferred back to the original owner once the proper assignor executed the assignment.

2. The lower [c]ourt erred when it overreached in its role as neutral arbiter of the facts, and rather operated as trial counsel rather than [j]udge, with said overreaching or interference with the flow of evidence thereby allowing the [c]ourt to reach an incorrect result.

## Discussion

*Merits*

Mr. Alexander first questions the trial court's determination of ownership, asserting that, while he had not achieved merchantable title pursuant to La.R.S. 32:705, other evidence was suggestive of his ownership. In particular, he argues that "the transaction of Mrs. Savanah Williams voluntarily signing the original [t]itle over to [him], completed the deal on the vehicle. Ownership should have been recognized as being held by [him] upon completion of her execution of the [t]itle, or, at the very least, through her own ratifying testimony."

Notably, Mr. Alexander equates Mrs. Williams' signature on the reverse of the original title as her "signing the original [t]itle over to him[.]" However, La.R.S. 32:705 provides, in pertinent part, that:

A. No person shall sell a vehicle without delivery to the purchaser thereof, whether such purchaser be a dealer or otherwise, a certificate of title issued under this Chapter in the name of the seller with such signed endorsement of sale and assignment thereon as may be necessary to show title in the purchaser[.]

. . . .

B. For purposes of this Section, an "endorsement" means one of the following:

(1) The signature of the seller in the presence of a notary who shall subscribe his name thereon.

(2) The signature of the seller in the presence of two witnesses who shall subscribe their names thereon, which signature shall be acknowledged by a subscribing witness . . . [.]

Certainly, in this case, it cannot be said that the original title returned to, and then retained by, Mr. Alexander contained Mrs. Williams' "endorsement" for purposes of La.R.S. 32:705. As noted by the trial court, her signature as "seller" was neither notarized nor witnessed. Additionally, Mr. Alexander's name is absent from the title as the document introduced into the record includes no "Buyer" on the reverse of the title.

Neither do we find merit in Mr. Alexander's contention that, although the formalities of La.R.S. 32:705 were not completed, the trial court was otherwise required to find the evidence supportive of transfer of ownership. While Mrs. Williams surrendered possession of both the original title bearing her name as owner and the truck to Mr. Alexander upon his demand, other evidence and events support the trial court's determination. In particular, Mr. Williams demanded the return of the truck when he returned to town, Mr. Alexander complied with that demand, Mrs. Williams obtained a duplicate title in her name after Mr. Alexander did not return the original title to her, and Mr. Alexander issued a policy of automobile insurance on the truck in Mrs. Williams' name. Mr. Alexander did not produce a bill of sale, title indicating his purchase of the truck, or insurance on the truck. To the contrary, the above objective markers favored Mrs. Williams. Additionally, any credibility determinations regarding Mr. Williams' completion of any work anticipated for the retention of the truck were within the province of the trial court as "it observes and participates in the live presentation, while the appellate court merely reviews the cold transcript." *Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC*, 14-2592, p. 10 (La. 12/18/15), 193 So.3d 1110, 1116-17.

Finding no manifest error in the trial court's determination regarding ownership, we find no merit in this assignment.

*Neutral Arbiter*

In his final assignment, Mr. Alexander contends that the trial court "overstepped its bounds in determining ownership." In particular, Mr. Alexander asserts that his questioning of Phillip Williams regarding his delivery of the truck to Mr. Alexander upon demand "can be interpreted as consistent with his believing Mr. Alexander was still owed money by Mr. Calvin Paul Williams." Yet, Mr. Alexander argues that the trial court conducted its own cross-examination "focused on drawing facts to support the legal conclusion and/or legal determination that the truck could not have belonged to Mr. Phillip Williams." Mr. Alexander suggests that such questioning, as well as other exchanges which he contends reveal "frustration" by the trial court, indicate that its role as neutral arbiter was undermined.

As explained above, the record supports the trial court's determination on the merits. This basis is apparent, notwithstanding the testimony from Phillip complained of by Mr. Alexander as to whether he believed that his uncle had not performed work as demanded by Mr. Alexander. Furthermore, and to the extent the trial court made inquiries of the witnesses, La.Code Evid. art. 614(B) specifically provides that "[t]he court may question witnesses, whether called by itself or by a party." Having reviewed the testimony, we do not find that the trial court abused its discretion in this regard. Further, we point out that this matter was a bench trial at which the parties proceeded in proper person. Reference to the transcript reveals that the trial court found the need to maintain control of the proceedings, advising at one point that: "[W]hen people come here to this [c]ourt and do not have an attorney I do the best I can to try and maintain some decorum between the two of you and it's very difficult, very difficult. Alright. I want to make sure that all you reach and have a fair trial."

Given these factors, and following review of the record in its entirety, we find no merit in this assignment of error.

**DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this proceeding are assigned to the defendant—appellant, Vincent Alexander.

**AFFIRMED.**